DECISION
{¶ 1} Relator, James Curtis Eck, has filed this original action requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his application for an additional award for a violation of a specific safety requirement and to issue an order finding that he is entitled to such an award.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} In State ex rel. Sanor Sawmill, Inc. v. Indus. Comm.,101 Ohio St.3d 199, 2004-Ohio-718, at ¶ 14, 25, the Ohio Supreme Court stated that:
* * * Because an additional award for a VSSR is, however, a penalty, it requires strict construction of the safety requirement, and "all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer." State ex rel. Burton v.Indus. Comm. (1989), 46 Ohio St.3d 170 * * *.
* * *
A specific safety requirement must plainly apprise an employer of its legal obligation to its employees. State ex rel. Trydlev. Indus. Comm. (1972), 32 Ohio St.2d 257 * * *.
 {¶ 4} At the time of his injury, relator was working at a machine known as a laminator that glued a plastic cover on one side of a sheet of fiberglass that was to be used as insulation. When the sheet of insulation reached a pre-determined length it was cut by a blade, the cut, however, was not automatic as it was manually activated at a control panel on the side of the machine. The blade moved from one side of the machine to the other with each cut, thus, the direction of the blade alternated with each cut. As the product left the machine, it was relator's job to grab it and place it around a wrap bar for further processing. At the time of relator's injury, there was a temporary lull in the cycle, as the bar that pushed the material off the laminator was stuck. Relator testified:
Q. All right. But it didn't — it took a while for him to mess around and fool around to try to get the bar — pushoff unstuck, correct?
A. No, sir.
Q. How long did it take?
A. Long enough for him to push the pushoff button again and hit those two black buttons on the control panel.
Q. So, you never saw him go down and try to work on the pushoff bar?
A. No, I did not.
Q. Okay. But if he testified that that's what he was doing, would you say that he was lying?
A. Yes, I would
Q. Okay. And your account of it is that this all just happened over a matter of a couple of seconds?
A. Correct.
(Tr. at 25-26.)
 {¶ 5} Relator testified that, at the time a fellow employee pushed the button to reactivate the cutting blade, his hand was on top of the insulating material and across the track followed by the saw blade. Relator's right little finger and ring finger were amputated.
 {¶ 6} Relator filed an application for an additional award based on a violation of a specific safety requirement based on Ohio Adm. Code 4121:1-5-11(D)(13)(a):[1]
All power driven knives or cutting blades, such as reciprocating knives, endless band knives, flying knives, slicer blades, and similar cutting machines, where exposed to contact, shall be guarded except for the necessary working portion of the blade while being used.
 {¶ 7} Both the commission and the magistrate concluded that the track of the blade was a necessary working portion of the blade and not required to be guarded.
 {¶ 8} In his objections, relator argues that, because no insulation was being cut at the time of the accident, the entire blade was required to be guarded. We disagree. Relator testified that, just seconds before the accident, sheets of insulation were running through the laminator and he had stepped in front of the machine to catch the next one when apparently some part of the machine jammed and there was a brief lull in the cycle. Relator testified this brief lull was no more than a few seconds. We find that, despite such a brief lull in the cycle, the blade was still in use and not required to be guarded.
 {¶ 9} Relator further argues that his injury could have been avoided if a guard, which exposed only two inches of the blade, had been in place, based on an assumption that the insulation being cut was two inches thick. This argument fails as well because, as the magistrate found, the failure to guard the blade was not the proximate cause of relator's injury, rather, the proximate cause of the injury was the fact that relator placed his hand within the zone which was a necessary portion of the blade while being used. That is, relator placed his hand in the track followed by the blade to cut the insulation. Thus, the magistrate did not err in finding that the commission had not abused its discretion by denying relator's application for an additional award for a violation of a specific safety requirement.
 {¶ 10} Upon a review of the magistrate's decision and an independent review of the evidence, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
Bryant and Petree, JJ., concur.
Bowman, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIXA IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. James Curtis Eck, :
Relator, :
v. : No. 05AP-444
Industrial Commission of Ohio : and Bay Insulation of Ohio, :
Respondents. :
 MAGISTRATE'S DECISION Rendered on October 7, 2005 Scully Delaney, and Timothy J. Delaney, for relator.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
Reminger Reminger Co., LPA, and Francis X. Gardner, for respondent Bay Insulation of Ohio.
 IN MANDAMUS {¶ 1} Relator, James Curtis Eck, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied him an additional award for the violation of a specific safety requirement ("VSSR") against respondent Bay Insulation of Ohio ("employer") and ordering the commission to enter a new order finding that he is entitled to compensation for a VSSR.
 {¶ 2} Findings of Fact:
 {¶ 3} 1. On April 29, 2003, relator was employed by the employer through an assignment from a temporary agency.
 {¶ 4} 2. On that date, relator and several co-workers were working on a laminating machine which processes insulation material by affixing a paper backing material to the foam insulation. Relator's duties on that date were to guide the length of insulation onto rollers after they had been cut to pre-determined lengths. The machine is designed to feed insulation in one side from large uncut rolls. Then, as the insulation feeds through the machine from one side, the insulation is laminated onto a piece of paper and then cut by a blade which moves in a fixed track across the material once per cycle. The blade is activated by an operator using buttons on a control panel located at the side of the machine. Relator's specific duty required that he stand on the output side of the machine, grasp the insulation as it is cut by the blade and then guide it onto a roller where it is prepared to be packaged.
 {¶ 5} 3. It is undisputed that, when he was injured, relator had inadvertently laid his hand across the track of the blade near the blade. The cutting cycle was inadvertently activated by the operator and the blade came into contact with relator's right hand, causing the injures which are allowed in this claim.
 {¶ 6} 4. Relator's claim has been allowed for:
Amputation of right little finger; post traumatic stress disorder and adjustment disorder with mixed emotional features; degloving dorsum right hand, amputation right little 5th finger through metacarpophalangeal joint and extensor tendon injury dorsum right ring finger.
 {¶ 7} 5. On September 4, 2003, relator filed a VSSR alleging that the employer had violated several provisions of the Ohio Administrative Code, including Ohio Adm. Code4121:1-5-11(D)(13)(a).
 {¶ 8} 6. A hearing was held before a staff hearing officer ("SHO") on November 17, 2004. The SHO determined that the only provision cited by relator which applied was Ohio Adm. Code4121:1-5-11(D)(13)(a). While the SHO found that the rule was applicable, the SHO nevertheless found that the employer had not violated the safety rule with regard to the guarding requirements and denied relator's application for a VSSR as follows:
The investigation report indicates that the machine involved is a laminator, run electrically. A guard for the saw was placed on the laminator subsequent to the industrial injury. The machine glues a plastic cover on one side of a sheet of fiberglass insulation that is ultimately cut when it reaches a predetermined length. The blade moves from one side to the other and stays with each cut. Therefore, the direction of the cut alternates with each cut. The product and the saw are located at the back of the laminator. The machine did have the pull cords and emergency stop button and they were in place at the time of the injury; the emergency stop button was 2-3 feet from injured worker and out of his reach. Injured worker was holding the edge of the insulation waiting for it to be jogged forward so he could wrap it around the wrap bar, the "push-off" button was stuck, and the operator hit the saw button. Per the witness affidavit the "push off" button was stuck and the sensors needed cleaning; the sensors were cleaned; no one was in the front of the machine; reset the cycle; the "push-off" and saw buttons work off the cycle; and to check cycle you push both buttons.
Charles Bauer, division manager for Employer, is the designer and builder of the laminator on which injured worker was injured. He testified that although the machine is referred to as a saw, it is actually a power driven rotary knife. He agreed with the testimony of injured worker that the process requires that injured worker hold the material while the machine cuts the material and that it was during a cut cycle that injured worker's fingers were in the way of the blade. Injured worker and Mr. Bauer testified that injured worker's hand was across the cutting track of the blade when the injury occurred. Ohio Administrative Code 4121:1-5-11(D)(13)(a) requires that power driven knives or cutting blades be guarded "except for the necessary working portion of the blade while being used". A guard for the cutting track was not part of the original design. Mr. Bauer testified that a guard for the cutting track had been researched prior to the date of injury but was not installed for fear of the guard trapping the operator's hand in the cutting track. This Staff Hearing Officer finds that the cutting track is a necessary working portion of the blade and; therefore, is not covered by Ohio Administrative Code 4121:1-5-11(D)(13)[(]a).
Staff Hearing Officer finds the injured worker has not met the burden of proof of demonstrating a causal connection between the employer's violation of Ohio Administrative Code4121:1-5-11(D)(13)(a) and his injury. As set forth above, the injured worker has not demonstrated that he was working around a power driven knife, that the employer was obligated to guard the necessary working portion of the blade and did not, and that he was injured. Accordingly, injured worker has not met the burden of proof.
(Emphasis sic.)
 {¶ 9} 7. Relator filed a motion for rehearing; however, the commission denied that motion in an order mailed February 23, 2005.
 {¶ 10} 8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 11} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 12} In regard to an application for an additional award for a VSSR, the claimant must establish that an applicable and specific safety requirement exists which was in effect at the time of the injury, that the employer failed to comply with the requirement, and that the failure to comply was the proximate cause of the injury in question. State ex rel. Trydle v. Indus. Comm. (1972), 32 Ohio St.2d 257. The interpretation of a specific safety requirement is within the final jurisdiction of the commission. State ex rel. Berry v. Indus. Comm. (1983),4 Ohio St.3d 193. Because a VSSR is a penalty, however, it must be strictly construed and all reasonable doubt concerning the interpretation of the safety standard are to be construed against its applicability to the employer. State ex rel. Burton v. Indus. Comm. (1989), 46 Ohio St.3d 170. The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the abuse of discretion test. Trydle, supra; State ex rel. A-F Industries v. Indus. Comm. (1986),26 Ohio St.3d 136; State ex rel. Ish v. Indus. Comm. (1985),19 Ohio St.3d 28.
 {¶ 13} The question before this court is whether the commission abused its discretion by finding that, although Ohio Adm. Code 4121:1-5-11(D)(13)(a) applied, the area of the cutting track where relator inadvertently placed his hand was a necessary working portion of the blade and therefore the employer was not required to guard that portion. For the reasons that follow, the magistrate finds that the commission did not abuse its discretion.
 {¶ 14} Relator does not contest the fact that the commission determined that only one of the numerous Ohio Administrative Code provisions which he originally cited as applicable actually applied. Ohio Adm. Code 4121:1-5-11(D)(13)(a), provides as follows:
All power driven knives or cutting blades, such as reciprocating knives, endless band knives, flying knives, slicer blades, and similar cutting machines, where exposed to contact, shall be guarded except for the necessary working portion of the blade while being used.
 {¶ 15} In the present case, the testimony elicited at hearing indicates that various thicknesses of insulation were cut on this particular machine. The insulation cut ranged from between two to eight inches in thickness. There was no evidence presented at the hearing concerning the thickness of the insulation which was being cut at the time of relator's injury. However, from the testimony it is apparent that at least two inches of blade would have necessarily needed to be exposed in order to cut the insulation which was being processed at the time of relator's injury. The magistrate and this court can take judicial notice of the fact that the fingers on an average size man would fit within a two inch opening.
 {¶ 16} In the present case, relator testified that he inadvertently placed his wrist on one of the roller bars and that his fingers crossed the cutting track across which the blade passes when the insulation is cut. As such, by his own testimony, relator had placed his hand directly in the path of the blade.
 {¶ 17} The hearing officer determined that the track was a necessary portion of the blade and that it was not required to be guarded pursuant to the above-cited Ohio Administrative Code provision. The magistrate finds that, while the hearing officer may not have articulated the finding well, the hearing officer was, nevertheless, correct. The code provision provides that the blade in question needed to be guarded with the exception of that portion of the blade which necessarily could not be guarded when the blade was being used. Because the testimony indicated that the thickness of insulation cut varied between two and eight inches, at any given point in time, between two and eight inches of the blade necessarily needed to be unguarded during a cutting cycle in order for the insulation to be cut. (Stipulation, at 127.) Because the thickness of the average man's fingers is less than two inches, when he placed his hand on the track, relator's hand became exposed to that portion of the blade which constituted the "necessary working portion of the blade while being used." So, while the track itself may not technically be a "necessary working portion of the blade," the evidence clearly shows that between two and eight inches of the blade needed to be exposed at any given point in time in order for the blade to cut the various thicknesses of insulation. As such, the hearing officer was correct to find that the Ohio Administrative Code provision applied and that the employer was required to guard the blade on this machine. However, the failure to guard the blade was not the proximate cause of relator's injuries since relator placed his hand within the zone which was a "necessary working portion of the blade while being used." Any failure on the part of the employer to guard this particular blade did not proximately cause relator's injuries and, as such, the commission did not abuse its discretion in denying relator's application for a VSSR.
 {¶ 18} Relator cites State ex rel. Dietrich Industries, Inc. v. Indus. Comm. (1988), 35 Ohio St.3d 183, and asserts that the court found a violation of Ohio Adm. Code 4121:1-5-11(D)(13)(a), based upon the fact that the guard on the blade did not prevent the claimant's hand from entering the danger zone where the blades were exposed to contact. In that case, the commission's finding, which was ultimately upheld, was based upon the fact that the affidavit submitted constituted some evidence that the amount of exposure of the knives was in excess of that necessary to cut the sheet metal which the claimant was feeding into the machine when the accident occurred. As such, in mandamus, the court found that there was some evidence to support the commission's decision to grant a VSSR award.
 {¶ 19} In contrast, in the present case the only evidence regarding the amount of blades which necessarily needed to be exposed was between two and eight inches of block. Assuming that the insulation being fed through the machine at the time of relator's injuries was two inches thick, then two inches of the blade needed to be exposed. Because the thickness of the average human finger is less than two inches, any guarding which would have been on this machine at the time of relator's injuries would not have prevented his injuries because his hand still could have been placed at a point where the blade would have injured him as it did. As such, the factual situation in the present case differs from the factual situation in Dietrich, where the commission specifically found that the amount of blade exposed was in excess of that which was necessary. There was no such finding in this case and none of the evidence presented would support such a finding.
 {¶ 20} Based on the foregoing, it is the magistrate's decision that the commission did not abuse its discretion in finding that any violation of Ohio Adm. Code 4121:1-5-11(D)(13)(a) was not the proximate cause of relator's injuries and that relator was not entitled to an additional award for the violation of a specific safety requirement. As such, this court should deny relator's request for a writ of mandamus.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE
[1] Ohio Adm. Code 4121:1-5-11 has been renumbered 4123:1-5-11.