DECISION
{¶ 1} Allstate Painting Contracting Co. ("Allstate"), filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order which granted James Smith an award for the violation of specific safety requirements and which compels the commission to enter a new order *Page 2 
denying the award. In the alternative, Allstate requests that the commission be compelled to vacate its finding that Allstate had simultaneously violated Ohio Adm. Code 4123:1-3-03(J)(1), (L)(1) and (L)(2). [D1]
 {¶ 2} The case was referred to a magistrate of this court. The parties stipulated the pertinent evidence and filed briefs. The magistrate then prepared and filed a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) No party has filed objections to the magistrate's decision. The case is before the court for review.
 {¶ 3} Upon review of the magistrate's decision, we find a few typographical errors which need to be corrected. On page two of the magistrate's decision in the first paragraph occurs a reference to "Ohio Adm. Code 4123:1-3-30(J)(1)(L)(1) and (2)." This should be corrected to read "Ohio Adm. Code 4123:1-3-03(J)(1), (L)(1) and (2)."
 {¶ 4} On page five of the magistrate's decision occurs a reference to "Ohio Adm. Code 4123:1-2-02(L)(1) and (2)." This should be corrected to read "Ohio Adm. Code 4123:1-3-03(L)(1) and (2)."
 {¶ 5} No other errors are present or apparent on the face of the magistrate's decision. We therefore adopt the findings of fact and conclusions of law in the magistrate's decision after the corrections listed above are made.
 {¶ 6} As a result, we vacate the award for violation of a specific safety requirement as made previously by the commission and return the matter to the commission for a determination as to which specific safety requirement or requirements *Page 3 
were violated and a determination as to the amount of the award between 15 to 50 percent of the maximum award established by law to be provided to James Smith.
Writ granted consistent with the decision of this court.
 PETREE and BROWN, JJ., concur. *Page 4 
 (APPENDIX A) MAGISTRATE'S DECISION
Rendered on September 26, 2006 Millisor Nobil Co., L.P.A., andMichael J. Reidy, for relator Allstate Painting Contracting Co.Law Offices of Arnold S. Livine, and David E. Pflanz, for respondent James Smith. Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
 {¶ 7} Relator, Allstate Painting Contracting Co., has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial *Page 5 
Commission of Ohio ("commission"), to vacate its order which granted the application of James Smith ("claimant") for an additional award for the violation of a specific safety requirement ("VSSR") and to issue an order finding that claimant is not entitled to a VSSR award. Alternatively, relator argues that the commission abused its discretion when it determined that relator had simultaneously violated Ohio Adm. Code 4123:1-3 30(J)(1)(L)(1) and (2).
Findings of fact:
 {¶ 8} Claimant sustained a work-related injury on November 7, 2001 when he fell approximately 28 feet from a platform to the ground. Claimant's claim has been allowed for the following conditions:
 FRACTURE CLAVICLE NOS-CLOSED; TRAUMATIC PNEUMOTHORAX-CLOSED, RIGHT; LUNG CONTUSION-CLOSED, RIGHT; LIVER INJURY NO WOUND IN CAVITY; FRACTURE SEVEN RIBS-CLOSED, RIGHT; FRACTURE ACETABULUM-CLOSED, RIGHT; PELVIC FRACTURE-CLOSED/PELVIC DISRUPTION, RIGHT; CLOSED SKULL BASE FRACTURE-BRIEF COMA, RIGHT; FRACTURE SCAPULA, GLENOID CAVITY/NECK-CLOSED, RIGHT; LUMBAR RETROLISTHESIS L1-2; LUMBAR SPINAL STENOSIS L4-5; CAUDA EQUINA SYNDROME NOS; LUMBAR ARTHROPATHY L5-S1.
 {¶ 9} The Staff Hearing Officer ("SHO") described the manner in which claimant was injured as follows:
 The Staff Hearing Officer finds that the injured worker was working for the named employer as a painter. Pursuant to the violation from the Occupational Safety and Health Administration the Staff Hearing Officer finds that the injured worker was working 28.3 feet above the ground at the time of the fall. The injured worker was working on a platform/scaffolding which was composed of a system of steel *Page 6 
cables upon which metal fencing was laid. The sections of fencing were connected by hand tied rope knots. The cables were connected to the bridge supports by knuckle clamps. On the date of the injury one of the steel cables was loosened or came loose which allowed the fencing upon which the injured worker was standing to drop. The injured worker then fell and was injured.
 {¶ 10} On July 24, 2003, claimant filed an application for an additional award for relator's VSSR. Claimant had alleged violations of Ohio Adm. Code Sections 4123:1-3-03(L)(1), (2), (4), (5), (6), (7),4123:1-3-03(L)(1), (2), (3), (4), and 4123:1-3-03(C)(1) and (2). In support of his application, claimant submitted his own affidavit wherein he indicated that, at the time of his injury, he was standing on some chain-link fencing material which was being used as a work platform. That work platform had been installed approximately six feet underneath the bottom of a bridge and was approximately 30 feet from the ground. While in the process of performing his work, the work platform inadvertently dropped and claimant fell to the ground. Claimant stated further that he had not been given any personal protective equipment and that safety nets were not available at the job site. Further, claimant indicated that relator had not conducted any safety meetings.
 {¶ 11} Claimant had also submitted the occupational safety and health administration ("OSHA") report finding relator had violated several provisions including the failure to provide a fall protection training program, and failure to provide fall protection where employees are exposed to a fall in excess of six feet.
 {¶ 12} The record also contains the July 11, 2004 affidavit of G. Anthony Rago, a safety consultant and owner of Technical Safety Associates. Mr. Rago opined that relator *Page 7 
should have installed one or more lifelines below the decking because the employees were exposed to hazards of falling and the work being performed was higher than six feet above the ground. He opined that lifelines were required for the type of work being performed by claimant as it would have allowed claimant to move about and yet remain attached to the lifeline by way of a lanyard. He stated further that it would have been impractical to attach a lanyard to the bridge superstructure because of the sizes of those materials. Mr. Rago averred further that safety nets could have been provided as an alternative pursuant to Subsection (L)(1).
 {¶ 13} The record also contained some statements by people in supervisory positions for the employer who were at the work site and who indicated that it was the policy of relator to use fall protection equipment.
 {¶ 14} A hearing was held before an SHO on November 1, 2005. The employer (relator herein) was not represented at the hearing and did not present any evidence. The SHO found that Ohio Adm. Code 4123:1-3-03(C)(1) and (2) did not apply as they refer to the condition in which personal safety equipment must be supplied by the employer. The SHO specifically found that no personal safety equipment was supplied in the instant case. Further, the SHO determined that Ohio Adm. Code 4123:1-3-03(J)(2) did not apply as that section referred to the manner in which safety belts, lifelines, or lanyards should be used and, in the present case, none were supplied. Further, the SHO determined that subsections (J) (4), (5), (6) did not apply as those subsections refer to the construction of lifelines, safety belts, and lanyards, which were not supplied. Further, the SHO determined that subsection (J)(7) did not apply because that subsection refers to *Page 8 
the use of safety nets in lieu of safety belts, lifelines, and lanyards, and because safety nets were not in use at the time. Further, the SHO determined that Ohio Adm. Code 4123:1-3-03(L)(3) and (4) did not apply because they refer to the use and construction of nets when nets are in use and no nets were used at the time of the injury. The SHO concluded that the employer was in violation of Ohio Adm. Code 4123:1-3-03(J)(1) as follows:
 The Staff Hearing Officer finds that the employer did violate Ohio Administrative Code 4123:1-3-03(J)(1) which requires that "lifelines, safety belts and lanyards shall be provided by the employer" when employees are "exposed to hazards of falling when the operation being performed is more than 15 feet above the ground * * *." Based upon the testimony of the injured worker the Staff Hearing Officer finds that no safety belts, lifelines or lanyards were available for use at the job site on the date of the injury. Based upon the OSHA report the Staff Hearing Officer finds that the work being performed was being performed at a height of more than 15 feet.
 {¶ 15} Further, the SHO found that relator was in violation of Ohio Adm. Code 4123:1-3-02(L)(1) and (2) as follows:
 The Staff Hearing Officer further finds that the employer was in violation of Ohio Administrative Code 4123:1-3-03(L) (1) (2). Section one provides that "safety nets shall be provided when work places are more than 25 feet above the ground, water, or other surface where the use of ladders, scaffolds catch platforms, temporary floors, safety lines or safety belts is impractical." The Staff Hearing Officer finds that the work place was more than 25 feet above the ground. The Staff Hearing Officer further finds that no safety nets were provided to prevent the injured worker or his coworkers from falling. Subsection two provides that "where safety net protection is required by this rule operations shall not be undertaken until the net is in place and has been tested." The Staff Hearing Officer finds that the injured worker had been working for several days at this job site and no safety nets were in place. *Page 9 
 {¶ 16} Lastly, the SHO determined that if relator had not violated the above code sections, claimant would not have fallen to the ground and would not have been injured. As such, the commission determined that the violations were the proximate cause of claimant's injury and granted an additional award in the amount of 25 percent of the maximum weekly rate.
 {¶ 17} Relator filed a request for rehearing and made the following arguments: (1) "[w]hen a platform/scaffold is being utilized, there can be no violations for non-use of safety belts, lifelines, lanyards or safety nets as they are not required;" (2) because the commission determined that the proximate cause of claimant's injuries was actually the fact that one of the steel cables was loosened allowing the fencing (platform) upon which claimant was standing to drop, there can be no violation since claimant was actually on the catch platform; and (3) a violation of Ohio Adm. Code 4123:1-3-03(L)(1) cannot be found unless the commission also finds that the use of ladders, scaffolds, catch platforms, temporary floors, safety lines or safety belts is impractical.
 {¶ 18} Relator's request for rehearing was denied by order of the commission mailed February 14, 2006.
 {¶ 19} Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. *Page 10 Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 21} In regard to an application for an additional award for VSSR, the claimant must establish that an applicable and specific safety requirement exists, which was in effect at the time of the injury, that the employer (relator herein) failed to comply with the requirement, and that the failure to comply was the cause of the injuries in question.State ex rel. Trydle v. Indus. Comm. (1972), 32 Ohio St.2d 257. The interpretation of a specific safety requirement is within the final jurisdiction of the commission. State ex rel. Berry v. Indus. Comm.
(1983), 4 Ohio St.3d 193. Because a VSSR award is a penalty, however, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard ought to be construed against its applicability to the employer. State ex rel. Burton v. Indus. Comm.
(1989), 46 Ohio St.3d 170. The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the *Page 11 
abuse of discretion test. Trydle, supra; State ex rel. A-F Industries v.Indus. Comm. (1986), 26 Ohio St.3d 136; State ex rel. Ish v. Indus.Comm. (1985), 19 Ohio St.3d 28.
 {¶ 22} The question before this court is whether there was some evidence before the commission to find that relator had failed to satisfy certain specific safety requirements. As more fully explained hereinafter, the magistrate finds that, although there is some evidence before the commission that relator did violate certain of the enumerated safety requirements, the matter must nevertheless be sent back to the commission for further consideration.
 {¶ 23} In its order, the commission determined that relator had violated Ohio Adm. Code 4123:1-3-03(J)(1) and (L)(1) and (2). The commission also determined that relator had not violated 4123:1-3-03(J)(7).
 {¶ 24} Ohio Adm. Code 4123:1-3-03 provides, in relevant part, as follows:
 (J) Safety belts, lifelines and lanyards.
 (1) Lifelines, safety belts or harnesses and lanyards shall be provided by the employer * * * [when employees are] exposed to hazards of falling where the operation being performed is more than six feet above ground or above a floor or platform * * *.
 * * *
 (7) Safety nets may be used in lieu of lifelines and safety belts or harnesses.
 * * *
 (L) Safety nets.
 (1) Safety nets shall be provided when workplaces are more than twenty-five feet above the ground, * * * or other surface *Page 12 
where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines or safety belts or harnesses is impractical.
 (2) Where safety net protection is required by this rule operations shall not be undertaken until the net is in place and has been tested.
 {¶ 25} Upon review of the record, the magistrate finds that claimant was clearly working more than 25 feet above the ground at the time that he sustained his injuries. Furthermore, there is "some evidence" in the record from which the commission could properly conclude that relator had not provided safety belts, lifelines, and lanyards. As such, relator's violation could fall under either subsection (J) or subsection (L). However, because the magistrate agrees with relator's argument that sections (J) and (L) cannot be simultaneously violated, the commission must consider whether subsection (J) or subsection (L) was violated.
 {¶ 26} In considering subsection (J) the magistrate finds that there was some evidence supporting a finding of a violation of subsection (1) in that relator failed to provide claimant lifelines, safety belts, or harnesses and lanyards when claimant was exposed to a hazard of falling where the operation was being performed more than six feet above the ground, or above a floor, or platform. Furthermore, based upon the finding that the employer had completely failed to satisfy this requirement (failed to provide any of the noted safety protection), that same evidence also established a violation of subsection (7) *Page 13 
because, having failed to satisfy (J)(1), relator could have provided safety nets in lieu of lifelines and safety belts or harnesses. In the present case, if the commission finds a violation of subsection (J)(1), the commission must also find a violation of subsection (7) because the commission would have determined that relator failed to provide lifelines, safety belts, or harnesses and lanyards, and further failed to utilize safety nets in lieu of that other protective equipment. If, upon remand, the commission finds a violation of subsection (J)(1), the commission should be ordered to also find a violation of subsection (7).
 {¶ 27} Subsection (L) applies when employees are working more than 25 feet above the ground, and where the use of safety lines, or safety belts, or harnesses is "impractical." The record contains some statements which seem to indicate the possibility that the use of lifelines, safety belts, and harnesses was impractical in this situation as that equipment would have impigned claimant's ability to perform his job. Upon remand, the commission may find that relator violated subsection (L)(1) and (2) if the commission finds that the use of lifelines and safety belts was impractical. However, because the employer cannot be found to have violated the requirement that it failed to provide lifelines and safety belts where providing such would have been impractical, the magistrate finds that (J) and (L) cannot be violated simultaneously.
 {¶ 28} Based on the foregoing, the magistrate finds that there is "some evidence" in the record to support the commission's determination that relator violated specific safety requirements and that those violations resulted in this claimant sustaining very serious injuries. The issue is what requirements were violated. Upon reconsideration, the commission must determine whether or not the use of lifelines, safety belts or harnesses and lanyards was impractical in this specific case. If the commission determines that the equipment could have been utilized, then the commission is directed *Page 14 
to find violations of subsections (J)(1) and (7). However, if the commission finds that the use of lifelines, safety belts, or harnesses and lanyards was impractical in this situation, then the commission is directed to find that relator violated subsection (L)(1) and (2). This may or may not lead to a decision by the commission to award claimant a different percentage award. As the Supreme Court of Ohio has held, after finding that a specific safety requirement has been violated, the commission has discretion in awarding the claimant any amount between 15 and 50 percent, inclusive, of the maximum award established by law. See, for example, State ex rel. Jeep Corp. v. Indus. Comm. (1989),42 Ohio St.3d 83. *Page 1