[Cite as *State ex rel. Jenkins v. Ohio Valley Stave, Inc.*, 2021-Ohio-3684.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Arthur Jenkins, | : | |
| Relator, | : | |
| | : | No. 20AP-20 |
| v. | : | (REGULAR CALENDAR) |
| Ohio Valley Stave, Inc. et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on October 14, 2021

**On brief**: *The Ivan Law Firm*, and *Katherine E. Ivan*, for relator.

**On brief**: *Cole, Kirby & Associates, LLC*, and *Charles A. Kirby*, for respondent Ohio Valley Stave, Inc.

**On brief**: *Dave Yost*, Attorney General, and *Cindy Albrecht*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Arthur Jenkins, commenced this original action in mandamus seeking an order compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for an additional award for violation of a specific safety requirement ("VSSR"), and to enter an order granting the application.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny

relator's request for a writ of mandamus. Relator filed the following two objections to the magistrate's decision:

> Objection 1: The Magistrate's Decision Should Not Be Relied Upon Because The "Phelps Chipper/Blower 25 Horsepower" Is A Combination Machine Even If It Does Not Combine Tools From Other Machines.

> Objection 2: The Magistrate's Decision Should Not Be Relied Upon Because The Magistrate Held That Universal Should Be Defined As Universal To Everything, Not Solely Universal To Woodworking.

{¶ 3} On December 21, 2015, relator sustained a work-related injury while working at the facility of respondent Ohio Valley Stave, Inc. ("Ohio Valley"). At the time of his injury, relator was operating a series of machines which converted larger pieces of wood into smaller wood chips and deposited the wood chips into a trailer. In the process, larger pieces of wood were initially converted to wood chips in an industrial chipper. The chipper deposited the wood chips into a shaker, which then deposited the wood chips onto a conveyor belt. The conveyor belt carried the wood chips to a chute leading to a trailer. A blower located underneath the end of the conveyor belt blew air onto the wood chips to direct them into the chute. Relator was clearing wood chips from around the sides of the blower when a belt on the blower's motor broke, resulting in the partial amputation of his thumb.

{¶ 4} Relator filed an application for an additional VSSR award, alleging that the lack of guarding on the blower and location of the blower's stopping device violated Ohio Adm.Code 4123:1-5-09(L)(1)(a) and (b). Following a hearing, a staff hearing officer ("SHO") denied relator's request for an additional VSSR award. The SHO concluded the blower was not subject to the requirements of Ohio Adm.Code 4123:1-5-09(L)(1), because the blower was not a combination or universal woodworking machine.

{¶ 5} Ohio Adm.Code 4123:1-5-09 contains safety regulations applicable to woodworking machinery. Ohio Adm.Code 4123:1-5-09(L), titled "Miscellaneous woodworking machines," provides in relevant part as follows:

> **(1) Combination or universal woodworking machines. –**

**(a) Guarding.** – Each point of operation shall be guarded as required for such a tool in a separate machine.

**(b) Stopping and starting devices.** – Such machines shall be provided with a separate stopping and starting device for each separate operation.

{¶ 6} To be entitled to an additional award for a VSSR, a claimant must show that: (1) a specific safety requirement applied, (2) the employer violated that requirement, and (3) the employer's violation caused the injury. *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm.*, 145 Ohio St.3d 76, 2015-Ohio-4798, ¶ 15, citing *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.*, 98 Ohio St.3d 134, 2002-Ohio-7089, ¶ 46. "The interpretation of a specific safety requirement is within the final jurisdiction of the commission and may be corrected in mandamus only upon a showing that the commission abused its discretion." *Id.* at ¶ 21, citing *State ex rel. Roberts v. Indus. Comm.*, 10 Ohio St.3d 1, 4 (1984). This court may not reweigh the evidence considered by the commission but must uphold the commission's decision so long as it is supported by some evidence. *State ex rel. Bob Marshall Enters. v. Indus. Comm.*, 10th Dist. No. 11AP-816, 2013-Ohio-943, ¶ 10. Because a VSSR award is a penalty imposed on an employer, specific safety requirements must be strictly construed in the employer's favor. *State ex rel. Lamp v. J.A. Croson Co.*, 75 Ohio St.3d 77, 78 (1996), citing *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989).

{¶ 7} Relator's first objection asserts the magistrate erred by failing to find the blower was a combination woodworking machine. The SHO determined that a combination woodworking machine was a machine which combines the functions of two or more separate machines into a single unit, such as "a machine that combines a table saw with a sander." (SHO Decision at 2.) The SHO observed that the blower was not attached to the chipper, and the "sole[]" function of the blower was "to help move the wood chips from the conveyor belt into the chute." (SHO Decision at 3.) As such, the SHO concluded that the blower was not a combination woodworking machine. The magistrate found no abuse of discretion in the SHO's conclusion.

{¶ 8} Relator fails to demonstrate the commission abused its discretion by interpreting a combination woodworking machine to mean a machine which combines the functions of two or more separate woodworking machines. *See Webster's Collegiate*

*Dictionary* 246 (11th Ed.2014) (defining "combination" as including "an instrument designed to perform two or more tasks"). The language in Ohio Adm.Code 4123:1-5-09(L)(1)(a), providing that a combination or universal woodworking machine must contain guarding at each point of operation "as required for such a tool in a separate machine," demonstrates that a combination or universal woodworking machine contains more than one tool. The language in Ohio Adm.Code 4123:1-5-09(L)(1)(b), requiring separate starting and stopping devices "for each separate operation" in a combination or universal woodworking machine, demonstrates that such machines have several operations. The evidence in the record demonstrated that the blower was a single tool machine with a single function: to blow air onto the wood chips to direct them into the chute. There was no evidence indicating that the blower synthesized multiple tools or that it had multiple operations.

{¶ 9}   Relator contends the blower was a combination woodworking machine because it was "a part of a group of machines that c[a]me together as a system to achieve [a] task." (Relator's Objs. at 6.) Relator fails to support his contention that a machine with a single function and operation, which merely operates alongside other machines, could be considered a combination woodworking machine. The plain language of the code supports the commission's conclusion that a combination woodworking machine was a machine which combined several tools or operations into one. *See State ex rel. Devore Roofing & Painting v. Indus. Comm.*, 101 Ohio St.3d 66, 2004-Ohio-23, ¶ 22 (stating that "we must defer to the commission's interpretation [of its own rules] when it relies upon its own common sense to avoid an illogical result").

{¶ 10}  As the blower had a single function and did not combine tools or operations, the commission did not abuse its discretion by finding the blower was not a combination woodworking machine. Relator's first objection is overruled.

{¶ 11} Relator's second objection asserts the magistrate erred by finding that a universal woodworking machine under Ohio Adm.Code 4123:1-5-09(L)(1) should be universal to all types of work, and not solely universal to woodworking. However, there is nothing in the magistrate's decision stating that a universal woodworking machine was a machine universal to all types of work. The magistrate noted with approval the SHO's definition of a universal machine as a machine which is adaptable or adjustable to meet

various requirements. The magistrate concluded that, as the blower had only one use, the blower was not a universal woodworking machine.

{¶ 12} Relator fails to demonstrate that the commission abused its discretion by interpreting a universal woodworking machine to mean a machine which is adaptable or adjustable to meet varied woodworking requirements. *See Webster's* at 1369 (defining "universal" as "adapted or adjustable to meet varied requirements (as of use, shape, or size)"). As there was no evidence indicating the blower was adaptable or adjustable to a variety of woodworking uses, the record supported the conclusion that the blower was not a universal woodworking machine.

{¶ 13} Relator also asserts the commission abused its discretion by finding that the blower was not a woodworking machine at all. The SHO observed that, by the time the blower directed the wood chips into the chute, the wood chips were not being created but were simply being transported from one point to another. The magistrate agreed with the SHO's determination that the blower did not perform a woodworking function.

{¶ 14} Relator asserts that the blower was a woodworking machine because the purpose of the blower was to "separate[] sawdust from wood." (Relator's Objs. at 7.) However, the record demonstrates that the shaker, not the blower, removed sawdust from the wood chips. Relator stated at the hearing before the SHO that the blower "blows the chips up in the chip van." (Apr. 11, 2018 Hearing Tr. at 5.) A representative of the employer stated that the "shaker, what it does is it separates the sawdust, which is a fine particulate, and the chips." (Apr. 11, 2018 Hearing Tr. at 35.) The SHO found that "[i]n the shaker, the wood chips are separated from sawdust," while the blower simply "aid[ed] the chips to travel into the chute." (SHO Decision at 1.)

{¶ 15} Notably, the machines addressed in Ohio Adm.Code 4123:1-5-09 all perform functions which alter wood in some respect. For example, the code section addresses sanding machines, wood shapers, lathes, and veneer machinery. None of the machines identified in Ohio Adm.Code 4123:1-5-09 are used solely to transport wood. As the blower's sole function was to transport the wood chips, and the blower did not alter the wood chips in any respect, relator fails to demonstrate that the blower performed a woodworking function.

{¶ 16} Accordingly, relator fails to establish that the commission abused its discretion by finding that the blower was not a universal woodworking machine. Relator's second objection is overruled.

{¶ 17} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Arthur Jenkins, | : | |
| Relator, | : | |
| v. | : | No. 20AP-20 |
| Ohio Valley Stave, Inc. et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on December 3, 2020

*The Ivan Law Firm,* and *Katherine E. Ivan,* for relator.

*Cole, Kirby & Associates, LLC,* and *Charles A. Kirby,* for respondent Ohio Valley Stave, Inc.

*Dave Yost,* Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 18} Relator, Arthur Jenkins ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that found respondent Ohio Valley Stave, Inc. ("employer"), did not violate a specific safety requirement ("VSSR").

Findings of Fact:

{¶ 19} 1. Claimant sustained a work-related injury on December 21, 2015 and his workers' compensation claim was allowed for the following conditions: complete traumatic transphalangeal amputation of right thumb; displaced open fracture of proximal phalanx

of the right index finger; laceration without foreign body of right index finger without damage to nail; laceration flexor muscle, fascia, and tendon of right index finger at wrist and hand level; injury extensor tendon right index finger; complex regional pain syndrome right upper arm; and unspecified depressive disorder.

{¶ 20} 2. On the date of injury, claimant was engaged in using a series of machines that converted large pieces of wood into smaller wood chips while also separating sawdust from the wood chips and depositing them into a container to be transported from the site. In this process, the large pieces of wood are first placed into a chipper. From the chipper, the wood chips are dumped into a shaker to separate the sawdust. After the wood chips are shaken, the shaker dumps the chips onto a conveyor belt. The conveyor belt carries the chips toward a chute. Underneath the end of the conveyor belt is a blower that blows air on the chips to direct the chips into the chute leading to a trailer.

{¶ 21} 3. Claimant was operating the blower when he was injured. The blower is driven by a motor with a three-pully belt drive. While clearing wood chips and sawdust from around the sides of the blower, a belt broke on the motor, resulting in the amputation of part of claimant's right thumb. A shutoff button for the blower was 41 feet away from where the injury occurred.

{¶ 22} 4. On November 21, 2016, claimant filed an application for additional award for VSSR—Non Fatal, and later amended his application to include additional code sections. Ultimately, claimant alleged that the employer had violated Ohio Adm.Code 4123:1-5-09(L)(1)(a) and (b), because the belts inside the blower were not guarded and the shutoff button was located too far away.

{¶ 23} 5. Ohio Adm.Code 4123:1-5-09 provides:

> (L) Miscellaneous woodworking machines. —
>
> (1) Combination or universal woodworking machines. —
>
> (a) Guarding. — Each point of operation shall be guarded as required for such a tool in a separate machine.
>
> (b) Stopping and starting devices. — Such machines shall be provided with a separate stopping and starting device for each separate operation.

{¶ 24} 6. On April 11, 2018, the matter was heard before a staff hearing officer ("SHO") for the commission.

{¶ 25} 7. On May 10, 2018, the SHO denied the application. The SHO found that the blower was not part of a combination or universal woodworking machine as used in Ohio Adm.Code 4123:1-5-09(L)(1), based on the following findings: (1) a "combination machine" is a woodworking machine that combines the functions of two or more separate machines into a single unit, such as a Shopsmith machine; (2) "universal" means adapted or adjustable to meet varied requirements (as of use, shape, or size), such as a universal remote control; (3) the blower is not attached to the chipper; (4) each part of the chipping process involves a separate machine in a separate area; (5) Ohio Adm.Code 4123:1-5-09(L)(1)(a) applies only to multiple different tools synthesized into one machine; and (6) the blower functions solely to help move wood chips from the conveyor belt into the chute, and there is no woodworking function occurring at this point in the operation. The SHO concluded that, because the blower is not a universal or combination woodworking machine, the requirements for the guarding and stopping/starting devices are not applicable to the blower.

{¶ 26} 8. On May 15, 2018, claimant filed a request for rehearing.

{¶ 27} 9. On June 20, 2018, the SHO denied the request for rehearing.

{¶ 28} 10. On January 8, 2020, claimant filed a complaint for writ of mandamus.

{¶ 29} 11. On January 23, 2020, claimant filed an amended complaint for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 30} For the reasons that follow, it is this magistrate's decision that this court should deny claimant's request for a writ of mandamus.

{¶ 31} In order for this court to issue a writ of mandamus, a relator must establish the following three requirements: (1) that relator has a clear legal right to the relief sought; (2) that respondent has a clear legal duty to provide such relief; and (3) that relator has no adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 32} To establish a VSSR, a claimant must prove that: (1) there exists an applicable and specific safety requirement in effect at the time of the injury; (2) the employer failed to comply with the requirements; and (3) the failure to comply was the proximate cause of the injury in question. *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257 (1972).

{¶ 33} The interpretation of a specific safety requirement is within the final jurisdiction of the commission. *State ex rel. Berry v. Indus. Comm.*, 4 Ohio St.3d 193 (1983). However, because a VSSR is a penalty, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989). The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the abuse of discretion test. *Trydle*; *State ex rel. A-F Indus., ACME-FAB Div. v. Indus. Comm.*, 26 Ohio St.3d 136 (1986). Furthermore, a safety requirement must be specific enough to plainly apprise an employer of its legal obligations to its employees. *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162 (1988).

{¶ 34} In the present matter, claimant argues the commission erred when it found the blower that caused the injury is not solely for woodworking activity. Claimant points out that the name of the blower is "Phelps Chipper/Blower 25 Horsepower," which demonstrates that its purpose is solely for woodworking activity because it separates sawdust from wood, not other materials. Claimant also argues the commission's analogy to a "universal" remote control is not sound because a universal remote control controls different types of equipment at once, while the blower does not serve this purpose. Claimant also contends that the blower is not inapplicable to the pertinent section solely because it is a separate machine.

{¶ 35} After reviewing the language in Ohio Adm.Code 4123:1-5-09(L)(1), it is the magistrate's determination that the commission did not abuse its discretion when it found the blower is neither a combination nor universal woodworking machine. The blower is not a combination machine. The blower is a single machine that executes a single function and does not work in any combined effort to provide any other functions. It does not combine tools from separate machines into one machine. The sole function the blower serves is to force air on the chips to direct them into a chute. The blower is also not a universal machine. As the SHO found, universal means something that can be adapted or adjusted to meet various requirements. There was no evidence before the commission that the blower is adaptable or adjustable to meet any other requirement or use. The blower has only one use: to blow air on chips to direct them into a chute.

{¶ 36} Furthermore, claimant's argument that a machine is not inapplicable to Ohio Adm.Code 4123:1-5-09(L)(1) solely because it is a "separate" machine is unpersuasive. "Separate," as used in Ohio Adm.Code 4123:1-5-09(L)(1)(a), not only suggests a physically separate machine but also a single-function or single-tool machine. This is apparent by the requirement that guards used in combination and universal woodworking machines must be the same guards used for the "tool in a separate machine." The use of the singular "tool" suggests that the separate machine referred to contains a single tool. Therefore, as applied to the present case, because the blower in question is a separate machine that contains a single tool with a single function, i.e., a blower, it cannot be within the purview of Ohio Adm.Code 4123:1-5-09(L)(1).

{¶ 37} The reliance on the term "separate" in this case also supports the SHO's finding that the blower does not perform any woodworking function, thereby eliminating it from the scope of Ohio Adm.Code 4123:1-5-09(L)(1). That the blower is a physically separate machine performing a separate function than the wood chipper prevents it from being considered part of the woodworking function of the chipper. By the time the chips reach the blower, the woodworking functions are complete, and the blower is engaged in only the separate function of transporting the chips. Therefore, the blower was also not a woodworking machine within the meaning of Ohio Adm.Code 4123:1-5-09(L)(1).

{¶ 38} Accordingly, it is the magistrate's recommendation that this court should deny claimant's request for a writ of mandamus.


/S/ MAGISTRATE
THOMAS W. SCHOLL III


NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).